UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD<br>1669 Benedict Canyon Drive<br>Beverly Hills, California 90210,<br><br>    PLAINTIFF<br>  vs.<br><br>DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530-0001<br><br>    DEFENDANT | )<br>)<br>)<br>) Judge _____<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

### THE PARTIES

1. Plaintiff Jason Leopold is a citizen of California residing at 1669 Benedict Canyon Drive, Beverly Hills, CA 90210.

2. Mr. Leopold is an investigative reporter covering a wide-range of issues, including Guantanamo, national security, counterterrorism, civil liberties, human rights, and open government. His reporting has been published in *The Wall Street Journal, The Financial Times*, *Salon*, *CBS Marketwatch*, *The Los Angeles Times*, *The Nation*, *Truthout*, Al Jazeera English and numerous other domestic and international publications. Currently, he is a contributor to Al Jazeera America and is the editor-at-large for *The Public Record*.

3. Mr. Leopold seeks access to certain public records to write a news report for distribution to the general public. His connections and relationships with a wide range of

1

domestic and international media organizations will ensure that any story he drafts based on the information contained in these records will be published and reprinted

4. Defendant Department of Justice (DOJ) is an agency of the United States.

5. The Office of Information Policy, the Office of the Attorney General, the Office of the Deputy Attorney General, and the Office of Legislative Affairs are all components of the DOJ.

6. The DOJ has possession, custody and control of the records Plaintiff seeks.

JURISDICTION AND VENUE

7. This action arises under the Freedom of Information Act ("FOIA"), 5 USC § 552.

8. This Court has jurisdiction over the parties and subject matter pursuant to 5 USC § 552(a)(4)(B).

9. Venue is proper in this district pursuant to 5 USC § 552(a)(4)(B).

STATEMENT OF FACTS

**BACKGROUND**

10. The Obama administration's use of unmanned aerial vehicles, commonly referred to as drones, for the purposes of engaging in lethal action against suspected terrorists has been the subject of fierce debate for years. Questions revolving around the legality of the use of drones to assassinate suspected terrorists, even alleged terrorists who are U.S. citizens, surfaced in September 2011, after Anwar Al-Awlaki and Samir Khan, two U.S. citizens alleged to be members of Al Qaeda in the Arabian Peninsula, were killed in drone strikes in Yemen. Two weeks after Mr. Awlaki's death, his son, Abdulrahman Al-Awlaki was also killed in a U.S. drone strike in Yemen.

11. The deaths of these men led the American Civil Liberties Union and *The New York Times* to file Freedom of Information Act requests with the Justice Department's Office of Legal Counsel seeking a copy of the legal memo authorizing the assassination against U.S. citizens. *The New York Times* and the ACLU later filed Freedom of Information Act lawsuits against the government for failing to comply with the FOIA requests. The Obama administration at this time never formally acknowledged the existence of a targeted assassination program.

12. In August 2012, Congress held hearings about the administration's use of drones for the purposes of engaging in lethal force against suspected terrorists. Certain members of Congress had complained that the administration's legal rationale for such action was not shared with oversight committees. It was during one such hearing in August 2012 that Sen. John Cornyn revealed that the Department of Justice had shared a "white paper" with him that explained the legal justification for assassinating U.S. citizens suspected of terrorism using drones.

13. During this hearing, Sen. Patrick Leahy also revealed that the Obama administration shared a copy of a white paper in question:

"I would note that each of the Senators has been provided with a white paper we received back as an initial part of the request I made of this administration. And I appreciate the bipartisan nature of seeking that. I wish we could, along with Senator Durbin, I wish even one Republican had joined us when we asked similar questions of the last Administration, but the clerk will call the roll."

14. It was the revelation that a white paper existed that sparked Mr. Leopold's FOIA request to the Department of Justice, in which he sought any and all white papers and other records that the administration shared with Congress about the program.

15. In his 2013 State of the Union address, President Obama said:

"My administration has worked tirelessly to forge a durable legal and policy framework to guide our counterterrorism efforts. Throughout, we have kept Congress fully informed of our efforts. I recognize that in our democracy, no one should just take my word for it that we're doing things the right way. So in the months ahead, I will continue to engage Congress to ensure not only that

our targeting, detention and prosecution of terrorists remains consistent with our laws and system of checks and balances, but that our efforts are even more transparent to the American people and to the world."

16. In May 2013, President Obama formally acknowledged the existence of the targeted assassination program, stating, "the United States has taken lethal, targeted action against al Qaeda and its associated forces, including with remotely piloted aircraft commonly referred to as drones."

17. Moreover, President Obama said during this counterterrorism speech that Congress had been fully informed of the decision to take lethal action against Americans suspected of terrorism:

"Not only did Congress authorize the use of force, it is briefed on every strike that America takes. Every strike. That includes the one instance when we targeted an American citizen – Anwar Awlaki, the chief of external operations for AQAP."

18. The President also said he declassified "this action":

"This week, I authorized the declassification of this action, and the deaths of three other Americans in drone strikes, to facilitate transparency and debate on this issue and to dismiss some of the more outlandish claims that have been made. For the record, I do not believe it would be constitutional for the government to target and kill any U.S. citizen – with a drone, or with a shotgun – without due process, nor should any President deploy armed drones over U.S. soil.

"But when a U.S. citizen goes abroad to wage war against America and is actively plotting to kill U.S. citizens, and when neither the United States, nor our partners are in a position to capture him before he carries out a plot, his citizenship should no more serve as a shield than a sniper shooting down on an innocent crowd should be protected from a SWAT team.

"That's who Anwar Awlaki was – he was continuously trying to kill people. He helped oversee the 2010 plot to detonate explosive devices on two U.S.-bound cargo planes. He was involved in planning to blow up an airliner in 2009. When Farouk Abdulmutallab – the Christmas Day bomber – went to Yemen in 2009, Awlaki hosted him, approved his suicide operation, helped him tape a martyrdom video to be shown after the attack, and his last instructions were to blow up the airplane when it was over American soil. I would have detained and prosecuted Awlaki if we captured him before he carried out a plot, but we couldn't. And as President, I would have been derelict in my duty had I not authorized the strike that took him out.

"Of course, the targeting of any American raises constitutional issues that are not present in other

strikes – which is why my administration submitted information about Awlaki to the Department of Justice months before Awlaki was killed, and briefed the Congress before this strike as well.  But the high threshold that we've set for taking lethal action applies to all potential terrorist targets, regardless of whether or not they are American citizens.  This threshold respects the inherent dignity of every human life.  Alongside the decision to put our men and women in uniform in harm's way, the decision to use force against individuals or groups – even against a sworn enemy of the United States – is the hardest thing I do as President.  But these decisions must be made, given my responsibility to protect the American people.

"Going forward, I've asked my administration to review proposals to extend oversight of lethal actions outside of warzones that go beyond our reporting to Congress."

## PLAINTIFF'S FOIA REQUESTS

19. On August 10, 2012, Mr. Leopold sent a FOIA request to DOJ/OIP requesting (1) specific records the Department of Justice provided to members of Congress or any member of the Obama administration concerning the use of unmanned aerial vehicles, commonly referred to as "drones," for purposes of lethal force against terrorist targets in other countries, and (2) correspondence from members of Congress to the Department concerning the legal rationale regarding the use of drones against terrorist targets from January 2010 to the present via email seeking a copy of records related to pertaining to a decision to withhold information from the media about the number of hunger striking detainees at Guantanamo Bay detention center.  Mr. Leopold requested expedited processing for his request as well as a waiver of fees.

20. Mr. Leopold's FOIA request, described in the previous paragraph, was received by DOJ/OIP on August 13, 2012.  Mr. Leopold's FOIA request was forwarded to the Office of the Attorney General, the Office of the Deputy Attorney General, and the Office of Legislative Affairs, and assigned tracking numbers, AG/12-0312 (F), DAG/12-0313 (F), and OLA/12-0314 (F), respectively.

## DEFENDANT'S RESPONSE TO MR. LEOPOLD'S FOIA REQUEST

21. As of the filing of this Complaint, Mr. Leopold has not received a response to his FOIA request that is the subject of this lawsuit with a determination as to whether Defendant will grant his request for a fee waiver.

22. As of the filing of this Complaint, Mr. Leopold has not received a final response to the FOIA request that is the subject of this lawsuit with a determination as to whether Defendant will release or withhold all of the requested records.

23. In a letter dated August 23, 2012, DOJ/OIP granted Mr. Leopold's request for expedited processing, but stated that no decision had been made on his request for a fee waiver.

24. In a letter dated February 8, 2013, DOJ/OIP provided an interim release to Mr. Leopold consisting of an Office of Legal Counsel White Paper entitled "Lawfulness of a Lethal Operation Directed Against a U.S. Citizen Who is a Senior Operational Leader of Al-Qa'ida or an Associate Force." The letter further indicated that the DOJ was continuing its search for responsive records.

25. Under 5 USC § 552(a)(6)(C)(i), Mr. Leopold is deemed to have exhausted his administrative remedies with regard to the FOIA request that is the subject of this lawsuit because Defendant has failed to comply with the statutory time limit.

## COUNT I:
## VIOLATION OF FOIA

26. This Count realleges and incorporates by reference all of the preceding paragraphs.

27. Each of the documents referred to in this Complaint is incorporated herein by reference.

28. Defendant has violated FOIA by improperly withholding the requested records.

29. Defendant has violated FOIA by failing to grant Mr. Leopold's request for a fee waiver.

30. Mr. Leopold has been and will continue to be irreparably harmed until Defendant is ordered to produce the requested records.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare Defendant's failure to comply with FOIA to be unlawful;

(2) Declare that Plaintiff is entitled to a fee waiver under FOIA;

(3) Order Defendant to process the requested records without further delay and release all nonexempt portions to Plaintiff without charging Plaintiff fees;

(4) Grant Plaintiff an award of attorney fees and other litigation costs reasonably incurred in this action pursuant to 5 USC § 552(a)(4)(E)(i);

(5) Grant Plaintiff such other and further relief which the Court deems proper.

Respectfully Submitted,

  /s/ Jeffrey Light
Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Plaintiff*