# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:14−cv−00168−APM

LEOPOLD v. DEPARTMENT OF JUSTICE
Assigned to: Judge Amit P. Mehta
Cause: 05:552 Freedom of Information Act

Date Filed: 02/04/2014
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**JASON LEOPOLD**　　　　represented by　**Jeffrey Louis Light**
LAW OFFICES OF JEFFREY LIGHT
1712 Eye Street, NW
Suite 915
Washington, DC 20006
(202) 277−6213
Fax: (202) 223−5316
Email: jeffrey@lawofficeofjeffreylight.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DEPARTMENT OF JUSTICE**　　　　represented by　**Amy E. Powell**
U.S. DEPARTMENT OF JUSTICE
P.O. Box 883
Washington, DC 20044
(202) 514−9836
Fax: (202) 616−8517
Email: amy.powell@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen McCoy Elliott**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
(202) 305−8177
Fax: (202) 616−8470
Email: stephen.elliott@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/04/2014 | 1 | | |

| | | | |
|---|---|---|---|
| | | | COMPLAINT against DEPARTMENT OF JUSTICE ( Filing fee $ 400 receipt number 0090−3611645) filed by JASON LEOPOLD. (Attachments: # 1 Civil Cover Sheet, # 2 Summons USAO, # 3 Summons USDOJ)(Light, Jeffrey) (Entered: 02/04/2014) |
| 02/04/2014 | 2 | | AMENDED COMPLAINT against DEPARTMENT OF JUSTICE filed by JASON LEOPOLD.(Light, Jeffrey) (Entered: 02/04/2014) |
| 02/04/2014 | | | Case Assigned to Judge Amy Berman Jackson. (sth, ) (Entered: 02/04/2014) |
| 02/04/2014 | 3 | | ELECTRONIC SUMMONS (2)Issued as to U.S. Attorney and U.S. Attorney General (Attachments: # 1 Summons, # 2 Summons)(sth, ) (Entered: 02/04/2014) |
| 02/05/2014 | 4 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 2/5/2014. ( Answer due for ALL FEDERAL DEFENDANTS by 3/7/2014.), RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 2/5/2014. (Light, Jeffrey) (Entered: 02/05/2014) |
| 02/07/2014 | 5 | | NOTICE of Appearance by Amy E. Powell on behalf of All Defendants (Powell, Amy) (Entered: 02/07/2014) |
| 03/07/2014 | 6 | | ANSWER to 2 Amended Complaint by DEPARTMENT OF JUSTICE. Related document: 2 Amended Complaint filed by JASON LEOPOLD.(Powell, Amy) (Entered: 03/07/2014) |
| 03/10/2014 | 7 | | ORDER that defendant file on or before 4/7/14 a dispositive motion or, in the alternative, a report setting forth the schedule for document production to plaintiff. Signed by Judge Amy Berman Jackson on 3/10/14. (DMK) (Entered: 03/10/2014) |
| 03/10/2014 | | | Set/Reset Deadlines: Defendant to file either a dispositive motion or, in the alternative, a report setting forth the schedule for document production to plaintiff by 4/7/2014. (jth) (Entered: 03/10/2014) |
| 04/07/2014 | 8 | | STATUS REPORT *and proposed schedule (unopposed)* by DEPARTMENT OF JUSTICE. (Powell, Amy) (Entered: 04/07/2014) |
| 04/08/2014 | | | MINUTE ORDER that defendant shall submit a further status report and proposed schedule for completion of processing and briefing (if any) on or before May 21, 2014. Signed by Judge Amy Berman Jackson on 4/8/2014. (lcabj3) (Entered: 04/08/2014) |
| 04/09/2014 | | | Set/Reset Deadlines: Defendant's Status Report and Proposed Schedule for Completion of Processing and Briefing (if any) is due by 5/21/2014. (jth) (Entered: 04/09/2014) |
| 05/21/2014 | 9 | | STATUS REPORT *and proposed schedule* by DEPARTMENT OF JUSTICE. (Powell, Amy) (Entered: 05/21/2014) |
| 05/21/2014 | | | MINUTE ORDER. In light of 9 the parties' joint status report and proposed schedule, it is ORDERED that defendant will complete processing of plaintiff's request and produce any additional, non−exempt material on or before August 22, 2014. It is FURTHER ORDERED that the parties will submit a schedule for |

| | | | |
|---|---|---|---|
| | | | further proceedings, if necessary, on or before September 5, 2014. Signed by Judge Amy Berman Jackson on 5/21/2014. (lcabj3) (Entered: 05/21/2014) |
| 05/22/2014 | | | Set/Reset Deadlines: The parties are to submit a schedule for further proceedings, if necessary, by 9/5/2014. (jth) (Entered: 05/22/2014) |
| 06/11/2014 | | | Case reassigned to Judge Tanya S. Chutkan. Judge Amy Berman Jackson no longer assigned to the case. (ztnr, ) (Entered: 06/11/2014) |
| 08/21/2014 | 10 | | Unopposed MOTION for Extension of Time to *Complete Document Processing and File Status Report* by DEPARTMENT OF JUSTICE (Powell, Amy) (Entered: 08/21/2014) |
| 08/22/2014 | | | MINUTE ORDER: Granting 10 Unopposed Motion for Extension of Time; Set/Reset Deadlines: Jointly Proposed Schedule for Further Proceedings due by 9/19/2014. Status Report due by 9/19/2014. Signed by Judge Tanya S. Chutkan on 8/22/14. (DJS) (Entered: 08/22/2014) |
| 09/19/2014 | 11 | | STATUS REPORT *and Proposed Scheduling Order* by JASON LEOPOLD. (Attachments: # 1 Text of Proposed Order)(Light, Jeffrey) (Entered: 09/19/2014) |
| 09/22/2014 | | | MINUTE ORDER: Having considered the parties' status report, it is hereby ordered that the parties shall comply with the following deadlines: Defendant's Motion for Summary Judgment and supporting material shall be filed by October 22, 2014: Plaintiff's opposition to the motion for summary judgment and any cross motion due by November 12, 2014; Defendant's reply/opposition by December 5, 2014; Plaintiff's reply memorandum in support of any cross motion by December 19, 2014. Signed by Judge Tanya S. Chutkan on 9/22/14. (DJS) Modified on 9/23/2014 (DJS, ). (Entered: 09/22/2014) |
| 09/23/2014 | | | Set/Reset Deadlines: Summary Judgment motion due by 10/22/2014. Opposition to Motion for Summary Judgment due by 11/12/2014. Defendant's reply to the Opposition due by December 5, 2014. Plaintiff's reply memorandum in support of any cross motion due by December 19, 2014. (sm) (Entered: 09/23/2014) |
| 09/23/2014 | | | Set/Reset Deadlines: Cross Motions due by 11/12/2014. Response to Cross Motions due by 12/5/2014. (sm) (Entered: 09/23/2014) |
| 10/22/2014 | 12 | | NOTICE *of Classified Lodging* by DEPARTMENT OF JUSTICE (Powell, Amy) (Entered: 10/22/2014) |
| 10/22/2014 | 13 | | MOTION for Summary Judgment by DEPARTMENT OF JUSTICE (Attachments: # 1 Declaration of Vanessa R. Brinkmann, # 2 Exhibit Exhibits A−D to the Brinkmann Declaration, # 3 Exhibit E−F to the Brinkmann Declaration, # 4 Declaration of Martha M. Lutz)(Powell, Amy) (Entered: 10/22/2014) |
| 11/10/2014 | 14 | | NOTICE of Appearance by Stephen McCoy Elliott on behalf of DEPARTMENT OF JUSTICE (Elliott, Stephen) (Entered: 11/10/2014) |
| 11/12/2014 | 15 | | Cross MOTION for Partial Summary Judgment by JASON LEOPOLD (Attachments: # 1 Exhibit 1 − Memos to Leadership Offices, # 2 Exhibit 2 − Custodians' Responses, # 3 Exhibit 3 − Processing Notes, # 4 Exhibit 4 − Memo from ODAG to OIP, # 5 Exhibit 5 − Routing and Transmittal Slip, # 6 |

| | | | |
|---|---|---|---|
| | | | Declaration Jason Leopold, # 7 Statement of Facts, # 8 Text of Proposed Order)(Light, Jeffrey) (Entered: 11/12/2014) |
| 11/12/2014 | 16 | | Memorandum in opposition to re 13 MOTION for Summary Judgment filed by JASON LEOPOLD. (Attachments: # 1 Exhibit 1 − Letter from Attorney General, # 2 Exhibit 2 − Transcript of Obama's speech at National Defense University, # 3 Exhibit 3 − Clapper Declaration, # 4 Text of Proposed Order)(Light, Jeffrey) (Entered: 11/12/2014) |
| 11/26/2014 | | | Case randomly reassigned to Judge Randolph D. Moss. Judge Tanya S. Chutkan no longer assigned to the case. (gt, ) (Entered: 11/26/2014) |
| 12/05/2014 | 17 | | REPLY to opposition to motion re 13 MOTION for Summary Judgment *and Opposition to Plaintiff's Cross−Motion for Summary Judgment* filed by DEPARTMENT OF JUSTICE. (Attachments: # 1 Supplemental Declaration of Vanessa R. Brinkmann, # 2 Response to Plaintiff's Statement of Facts, # 3 Text of Proposed Order)(Elliott, Stephen) (Entered: 12/05/2014) |
| 12/05/2014 | 18 | | Memorandum in opposition to re 15 Cross MOTION for Partial Summary Judgment filed by DEPARTMENT OF JUSTICE. (See docket entry 17 to view document)(rdj) (Entered: 12/08/2014) |
| 12/08/2014 | | | NOTICE OF ERROR re 17 Reply to opposition to Motion; emailed to stephen.elliott@usdoj.gov, cc'd 3 associated attorneys −− The PDF file you docketed contained errors: 1. Two−part docket entry, 2. Counsel IS REMINDED to DOCKET the opposition as a separate entry. NO ACTION REQUIRED (zrdj, ) (Entered: 12/08/2014) |
| 12/19/2014 | 19 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 15 Cross MOTION for Partial Summary Judgment by JASON LEOPOLD (Attachments: # 1 Text of Proposed Order)(Light, Jeffrey) (Entered: 12/19/2014) |
| 12/26/2014 | 20 | | REPLY to opposition to motion re 15 Cross MOTION for Partial Summary Judgment filed by JASON LEOPOLD. (Light, Jeffrey) (Entered: 12/26/2014) |
| 12/30/2014 | 21 | | Unopposed MOTION for Leave to File *Sur−Reply* by DEPARTMENT OF JUSTICE (Attachments: # 1 Sur−Reply in Response to Plaintiff's Reply Memorandum, # 2 Text of Proposed Order)(Elliott, Stephen) (Entered: 12/30/2014) |
| 01/05/2015 | 22 | | Case reassigned to Judge Tanya S. Chutkan. Judge Randolph D. Moss no longer assigned to the case. (ztnr, ) (Entered: 01/05/2015) |
| 01/08/2015 | | | Case randomly reassigned to Judge Amit P. Mehta. Judge Tanya S. Chutkan no longer assigned to the case. (ztnr, ) (Entered: 01/08/2015) |
| 02/04/2015 | | | MINUTE ORDER granting, nunc pro tunc to December 19, 2014, 19 Unopposed Motion for Extension of Time to File Response/Reply. Plaintiff's 20 Reply to Opposition that was filed on December 26, 2014 shall be considered timely. Signed by Judge Amit P. Mehta on 02/04/2015. (lcapm1) (Entered: 02/04/2015) |
| 02/04/2015 | | | MINUTE ORDER granting 21 Unopposed Motion for Leave to File Sur−Reply. The Clerk's Office is directed to docket Attachment 1 as Defendant's Sur−Reply. Signed by Judge Amit P. Mehta on 02/04/2015. (lcapm1) (Entered: |

| | | | |
|---|---|---|---|
| | | | 02/04/2015) |
| 02/04/2015 | 23 | | SURREPLY to re 15 Cross MOTION for Partial Summary Judgment filed by DEPARTMENT OF JUSTICE. (rdj) (Entered: 02/10/2015) |
| 07/21/2015 | 24 | | ORDER. On or before July 27, 2015, Defendant shall make available to the court for in camera inspection an unredacted version of the White Paper, a redacted version of which was filed with the court as ECF No. 13−3, pages 19−40. Please see the attached Order for additional details. Signed by Judge Amit P. Mehta on 07/21/2015. (lcapm2) (Entered: 07/21/2015) |
| 07/22/2015 | 25 | | NOTICE OF SUPPLEMENTAL AUTHORITY by DEPARTMENT OF JUSTICE (Attachments: # 1 Exhibit A − ACLU v. CIA (DDC), # 2 Exhibit B − ACLU v. DOJ (SDNY))(Powell, Amy) (Entered: 07/22/2015) |
| 07/24/2015 | 26 | | NOTICE of Classified Lodging by DEPARTMENT OF JUSTICE (Powell, Amy) (Entered: 07/24/2015) |
| 08/12/2015 | 27 | 8 | MEMORANDUM OPINION AND ORDER granting in part and denying in part 13 Defendant's Motion for Summary Judgment and 15 Plaintiff's Cross−Motion for Partial Summary Judgment. See attached Memorandum Opinion and Order for further details. Signed by Judge Amit P. Mehta on 08/12/2015. (Entered: 08/12/2015) |
| 09/11/2015 | 28 | | Joint STATUS REPORT by DEPARTMENT OF JUSTICE. (Elliott, Stephen) (Entered: 09/11/2015) |
| 09/14/2015 | | | MINUTE ORDER: The parties shall file another Joint Status Report on or before September 21, 2015, describing additional steps that DOJ has taken to comply with the court's order of August 12, 2015, including (1) whether new searches have identified responsive documents, and (2) if so, a proposed date by which DOJ will finish processing the new records. Signed by Judge Amit P. Mehta on 09/14/2015. (lcapm1) (Entered: 09/14/2015) |
| 09/14/2015 | 29 | | NOTICE of Classified Lodging by DEPARTMENT OF JUSTICE (Elliott, Stephen) (Entered: 09/14/2015) |
| 09/14/2015 | 30 | | MOTION for Reconsideration by DEPARTMENT OF JUSTICE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Elliott, Stephen) (Entered: 09/14/2015) |
| 09/14/2015 | | | Set/Reset Deadlines/Hearings: Joint Status Report due by 9/21/2015. (cdw) (Entered: 09/17/2015) |
| 09/21/2015 | 31 | | Joint STATUS REPORT by DEPARTMENT OF JUSTICE. (Elliott, Stephen) (Entered: 09/21/2015) |
| 10/01/2015 | 32 | | Consent MOTION for Extension of Time to File Response/Reply as to 30 MOTION for Reconsideration by JASON LEOPOLD (Attachments: # 1 Text of Proposed Order)(Light, Jeffrey) (Entered: 10/01/2015) |
| 10/02/2015 | | | MINUTE ORDER granting 32 Consent Motion for Extension of Time. It is further ordered that Plaintiff's Opposition to 30 Defendant's Motion for Reconsideration is due on or before October 22, 2015. No further extensions will be granted absent extraordinary circumstances. Signed by Judge Amit P. Mehta on 10/02/2015. (lcapm1) (Entered: 10/02/2015) |

| 10/02/2015 | | | Set/Reset Deadlines/Hearings: Response to 30 due by 10/22/2015. (cdw) (Entered: 10/02/2015) |
| --- | --- | --- | --- |
| 10/08/2015 | 33 | 7 | NOTICE OF APPEAL TO DC CIRCUIT COURT re 27 by DEPARTMENT OF JUSTICE. Fee Status: No Fee Paid. Parties have been notified. (Elliott, Stephen) Modified on 10/9/2015 to add linkage (zrdj). (Entered: 10/08/2015) |

| | |
|---|---|
| JASON LEOPOLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:14-cv-00168 (APM) |
| v. | ) |
| | ) |
| UNITED STATES | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendant United States Department of Justice appeals to

the United States Court of Appeals for the District of Columbia Circuit from the Memorandum

Opinion and Order granting, in part, Plaintiff's Cross-Motion for Summary Judgment, entered on

August 12, 2015 (ECF No. 27).

Dated: October 8, 2015        Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Stephen M. Elliott*
AMY POWELL
STEPHEN M. ELLIOTT
Attorneys
U.S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, DC 20001
Tel: (202) 305-8177/Fax: (202) 616-8470
Email: stephen.elliott@usdoj.gov

*Counsel for Defendant*

| | |
|---|---|
| **Jason Leopold,** | **)** |
| **Plaintiff,** | **)** |
| **v.** | **) Civil No. 1:14-cv-00168 (APM)** |
| **Department of Justice,** | **)** |
| **Defendant.** | **)** |

## MEMORANDUM OPINION AND ORDER

**I.      INTRODUCTION**

In or around September 2011, the United States used a drone strike to kill Anwar al-Aulaqi, a U.S. citizen living in Yemen who administration officials had determined was a senior leader of al-Qaeda.  The following year, Jason Leopold, an investigative reporter, filed a Freedom of Information Act (FOIA) request with the Department of Justice (DOJ) seeking documents related to the lethal use of drones against terrorist targets.  Believing that DOJ had not adequately responded to his request, Plaintiff brought this action in February 2014, after which DOJ produced 96 pages of responsive material.  The parties now join issue on two matters: first, the reasonableness of DOJ's search in response to Plaintiff's FOIA request; and second, the appropriateness of DOJ's invocation of the classified information and national security exemptions within FOIA to support its redactions to a DOJ "White Paper" produced to Plaintiff.

Before the court are Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment.  For the reasons set forth below, the court holds that DOJ did not conduct an adequate search in response to Plaintiff's FOIA request because it construed

the term "Obama administration" too narrowly. In all other respects DOJ's search was reasonable. As for the redactions to the White Paper, the court concludes that the vast majority were proper under FOIA Exemption 1. Certain redacted passages of legal analysis, however, do not reference or pertain to classified information or implicate national security concerns and thus must be disclosed.

Defendant's Motion for Summary Judgment is therefore granted in part and denied in part. Plaintiff's Cross-Motion for Partial Summary Judgment also is granted in part and denied in part. Consistent with this opinion, DOJ shall conduct a new search that is reasonably calculated to uncover the documents Plaintiff seeks. In addition, it must disclose a revised redacted White Paper.

## II.    BACKGROUND

During an August 2012 Congressional hearing, at least two U.S. Congressmen publicly stated that there existed a DOJ "White Paper" addressing the legality of the government's use of drones against U.S. citizens living abroad who were suspected of terrorist activities. Thereafter, Plaintiff Leopold filed a FOIA request with DOJ seeking a copy of the White Paper, as well as related documents (the "First Request"). The First Request stated:

> I am seeking copies of all 'white papers' and/or PowerPoints, briefing memos, and/or policy summaries and/or policy papers that Department of Justice officials provided to members of Congress, specifically but not limited to the Senate and House Judiciary Committees, or any member of the Obama administration on the use of Unmanned Aerial Vehicles (commonly referred to as "drones") for the purpose of engaging in lethal force in other countries against terrorist targets. Additionally, I seek copies of all correspondence, which includes but is not limited to memos, letters and emails, members of Congress sent to the Justice Department inquiring about the legal rationale behind the use of Unmanned Aerial Vehicles for the purposes of engaging in lethal force against terrorist targets in other countries and/or the general use of Unmanned Aerial Vehicles to hunt down terrorists. I request FOIA analysts use the following search terms: 'targeted killing(s)[,]' 'targeted killing program,' 'targeted assassination program,' 'white paper,'

2

'Senator John Cornyn,' 'Senator Patrick Leahy.' The timeframe for this request would be January 2010 through the present.

Decl. of Vanessa R. Brinkmann [hereinafter "Brinkmann Decl."], Ex. A, ECF No. 13-2 at 2. The DOJ Office of Information Policy ("OIP") received the request on August 10, 2012. Brinkmann Decl., ECF No. 13-1 ¶ 3. By a letter dated August 23, 2012, OIP notified Plaintiff that it had received his request and had granted "expedited processing." Brinkmann Decl., Ex. B, ECF No. 13-2 at 5.

DOJ's response was anything but expeditious. Six months later, and before Plaintiff's receipt of any materials in response to the First Request, a 16-page, single-spaced DOJ memorandum entitled "Lawfulness of a Lethal Operation Directed Against a U.S. Citizen Who Is a Senior Operational Leader of Al-Qa'ida or An Associated Force" [hereinafter "Leaked Drone Memorandum"] was leaked to NBC News.[1] In response, on February 6, 2013, Plaintiff submitted a second FOIA request (the "Second Request"), in which he asked for the administrative record of DOJ's processing of the First Request. Two days later, OIP presented Plaintiff with a version of the Leaked Drone Memorandum, which differed from NBC's copy only in that it was marked "Draft November 8, 2011." Brinkmann Decl. ¶ 16; *id.*, Ex. C, ECF No. 13-2 at 8-9. This "interim response" also advised Plaintiff that OIP's search for records responsive to the First Request was ongoing. Brinkmann Decl. ¶ 16.

On February 4, 2014, a year after receiving the Leaked Drone Memorandum and having received no other records from DOJ, Plaintiff filed the complaint in this case. ECF No. 1. Several months later, DOJ began to produce additional documents to Plaintiff. *See* Status Report and Proposed Schedule, ECF No. 8. First, on May 21, 2014, OIP produced 46 pages of unredacted

---

[1] *See* Michael Isikoff, *Justice Department Memo Reveals Legal Case for Drone Strikes on Americans*, NBC News (Feb. 4, 2013), http://investigations.nbcnews.com/_news/2013/02/04/16843014-justice-department-memo-reveals-legal-case-for-drone-strikes-on-americans (last visited Aug. 6, 2015).

documents, consisting almost entirely of correspondence between DOJ and Members of Congress. Brinkmann Decl., Ex. D, ECF No. 13-2 at 26-73.  Then, on August 22, 2014, OIP produced 12 pages, similarly consisting of emails and correspondence between DOJ staff and Members of Congress or their staffs, which contained only a single redaction pursuant to FOIA Exemption 6. Brinkmann Decl., Ex. E, ECF No. 13-3 at 2-15; *see also* 5 U.S.C. § 552(b)(6) (exempting "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"). Finally, on September 5, 2014, OIP produced a 22-page "White Paper," dated May 25, 2011 and titled "Legality of a Lethal Operation by the Central Intelligence Agency Against a U.S. Citizen [REDACTED]."  Brinkmann Decl., Ex. F, ECF No. 13-3 at 19.  This White Paper contained significant redactions under FOIA Exemptions 1 and 3.  *See id.*; *see also* 5 U.S.C. § 552(b)(1), (b)(3) (exempting material that is subject to secrecy by executive order and by statute, respectively).

The White Paper produced on September 5, 2014, was "prepared by DOJ for Congress [and] discusse[d] the legal basis upon which the CIA could use lethal force in Yemen against a U.S. citizen.  Although this paper d[id] not mention the U.S. citizen by name – the target of the contemplated operation was Anwar al-Aulaqi."  Decl. of Martha Lutz, ECF No. 13-4 ¶ 17 [hereinafter "Lutz Decl."].  The White Paper was prepared before the U.S. government carried out the 2011 operation in which al-Aulaqi was killed.  Pl.'s Mem. In Opp'n to Def.'s Mot. For Summ. J., Ex. 1, ECF No. 16-1 at 2-4 (May 22, 2013 letter from Attorney General Holder to Senator Patrick Leahy); *Islamist Cleric Anwar al-Awlaki Killed in Yemen*, BBC News (Sept. 30, 2011), http://www.bbc.com/news/world-middle-east-15121879 (last visited Aug. 6, 2015).  It also provided a more fulsome analysis of the Yemen operation than was contained in the Leaked Drone Memorandum released in 2013.

DOJ's three additional productions did not end this dispute, however. Disagreements remain over the reasonableness of DOJ's search and the appropriateness of its redactions to the White Paper. Those two issues are now before the court. Defendant seeks summary judgment, while Plaintiff cross-moves for partial summary judgment.

## III. DISCUSSION

The Freedom of Information Act embodies a profound and powerful commitment to the ideals enshrined in our Constitution. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Thus the law requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions, *see* 5 U.S.C. § 552(b); *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). Federal courts have the authority to order agencies to produce any records improperly withheld. 5 U.S.C. § 552(a)(4)(B). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, while a fact is "material" only if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A non-material factual dispute is insufficient to prevent the court from granting summary judgment. *Id*. The moving party must support the assertion that no facts are in dispute by "citing to particular parts of materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). In making its determination as to summary judgment, the court must review "[a]ll underlying facts and inferences . . . in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010) (citing *Anderson*, 477 U.S. at 255).

An agency seeking summary judgment in a FOIA case bears the burden of showing that, even with the facts viewed in the light most favorable to the requester, the agency has conducted a search "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To carry its burden, the agency may submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Production of such an affidavit allows a requester to challenge, and a court to assess, the adequacy of the search performed by the agency. *Id*. These affidavits are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal

quotation marks omitted).  Summary judgment based on affidavits is not warranted, however, if the affidavits are "controverted by either contrary evidence in the record [or] by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted); *see also Hall v. CIA*, 668 F. Supp. 2d 172, 196 (D.D.C. 2009) ("Courts may permit discovery in FOIA cases where a plaintiff has made a sufficient showing that the agency acted in bad faith.") (internal quotation marks omitted).

### A.     Adequacy of the Search

The parties first contest the adequacy of DOJ's search for responsive records.  DOJ asserts that it conducted an adequate search reasonably designed to produce responsive documents. Plaintiff disagrees, raising a host of objections.

Before addressing the parties' specific arguments, the court first discusses the steps DOJ took to identify relevant documents.  To demonstrate the reasonableness of its search, DOJ submitted a declaration from Vanessa Brinkmann, Senior Counsel at OIP.  *See Brinkmann* Decl. As the Brinkmann Declaration explains, because Plaintiff's request sought materials shared with the Obama administration, and because it involved "communications with Congress concerning a high-level matter," OIP conducted searches in three DOJ leadership offices:  (1) the Office of the Attorney General (OAG); (2) the Office of the Deputy Attorney General (ODAG); and (3) the Office of Legislative Affairs (OLA).  *Id.* ¶ 4.  OIP believed that the records sought by Plaintiff were most likely to be found in these offices.  *Id.*

### 1.     *OIP's Search as Discussed in the Brinkmann Declaration*

#### a.     Electronic Records Search of OAG and ODAG

To identify responsive materials held by DOJ's two main leadership offices—OAG and ODAG—OIP searched the Executive Secretariat's Intranet Quorum (IQ) database.  *Id*. ¶ 6.  The

IQ database is the "the official records repository of OAG and ODAG, and in particular, of records of all formal, controlled correspondence sent to or from OAG and ODAG," including "official correspondence sent to or from OLA and Congress." *Id.* OIP conducted keyword searches of the database using the following search terms provided by Plaintiff: "targeted killing(s)"; "targeted killing program"; "targeted assassination program"; "white paper"; "Senator John Cornyn"; and "Senator Patrick Leahy." *Id.* ¶ 7. OIP then reviewed responsive records and made redactions where it deemed appropriate before producing them to Plaintiff. *Id.*

### b. Identification of Potential Custodians within OAG, ODAG, and OLA

In addition to searching the IQ database, OIP sent memoranda to liaisons within each of the three leadership offices. *Id.* ¶ 4. Upon receipt of OIP's memorandum, the liaison in each leadership office notified individual staff members within that office of the search request. Those staff members, "as the custodians of their own records and the best authorities on what records they would personally maintain," *id.*, then advised the liaison that they either (i) had no responsive records; (ii) would conduct their own search and provide responsive material directly to the OIP; or (iii) might have responsive material, and therefore, an OIP specialist should initiate a search of the staff members' electronic records and/or paper files. *Id.* This process yielded four custodians within OAG who might have responsive records; four such custodians within ODAG; and two such custodians within OLA. *Id.* ¶¶ 10-11, 13. The liaisons then reported that information to OIP, which executed the requested searches, compiled responsive material, and made redactions before disclosing to Plaintiff the results of the search.

### c. Electronic Mail Search

To identify responsive electronic mail, OIP performed a "test" search on the electronic mail of seven of the nine self-reported custodians (one of the ten custodians maintained only paper

records, thus reducing the email custodians to nine) using Plaintiff's prescribed search terms. *Id.*
¶ 14. That search yielded 41,965 documents. *Id.* at 8 n.5. To reduce the universe of potentially
responsive materials, OIP determined that, because Plaintiff's request sought material exchanged
with members of Congress or provided to any member of the "Obama administration," the search
should be narrowed along those lines. *Id.* ¶ 14. "Thus, OIP conducted a secondary search of the
documents retrieved using plaintiff's search terms in order to locate records containing one or
more of the terms provided by plaintiff that were exchanged between the Department and any e-
mail account ending in 'senate.gov,' 'house.gov,' or "eop.gov[,]'" the latter including the email
accounts of staff in the Executive Office of the President. *Id.*

  As a result of the foregoing search efforts, OIP identified and produced a total of 96 pages
of records responsive to Plaintiff's FOIA request. *Id.* ¶ 15.

     2.  *Plaintiff's Arguments that the Search was Inadequate*

       a.  Plaintiff's Argument that the Brinkmann Declaration is Not Entitled
          to a Presumption of Good Faith

  Plaintiff first argues that the Brinkmann Declaration contains untruths with respect to its
description of the search, and therefore the declaration is not entitled to the ordinary presumption
of good faith. *See Casey*, 656 F.2d at 738. In support of this assertion, Plaintiff has presented the
documents he acquired through his Second Request, which concern how DOJ processed his
First Request. Pl.'s Mem. In Supp. of His Cross-Mot. For Partial Summ. J., ECF No. 15 at 2-6
[hereinafter "Pl.'s Summ. J. Memo"]; *see also id.* Exs. 1-5. Based on those documents, he argues
that the Brinkmann Declaration inaccurately recounts the number of custodians with responsive
paper records. *Id.* at 4. Plaintiff points to an internal OIP memorandum that shows that *one*
individual in OAG had potentially responsive paper records, *id.* at 3-4; *id.*, Ex. 2, ECF No. 15-2,
whereas the Brinkmann Declaration stated that "OAG did not identify *any* potentially responsive

9

paper records," Brinkmann Decl. ¶ 11 (emphasis added). The internal OIP memorandum also shows that *three* ODAG staff members requested that OIP conduct a search of their paper records, Pl.'s Summ. J. Memo, Ex. 2, whereas the Brinkmann Declaration stated that only *one* person made such a request, Brinkmann Decl. ¶ 10.

In response to these contentions, DOJ provided a supplemental declaration from Brinkmann (hereinafter "Supplemental Brinkmann Declaration"), in which she admitted making errors in her initial declaration: "The statements made in my October 22, 2014 declaration regarding the number of OAG and ODAG custodians who may maintain potentially responsive records were incorrect." Brinkmann Supp. Decl., ECF No. 17-1 ¶ 11. But Brinkmann also stated that documents obtained via the Second Request, while accurate, reflected a "partial and incomplete picture of the records searches conducted in this case." *Id.* ¶ 4. She clarified the steps OIP took to locate documents:

> OIP did search the paper records of the one OAG custodian, as well as of two of the three ODAG custodians who indicated they may maintain potentially responsive paper records in the OAG and ODAG search responses [disclosed in the Second Request]. With regard to the third ODAG custodian, OIP was subsequently advised that, upon further review of the request and a preliminary search conducted by ODAG administrative personnel with knowledge of the custodian's records, that the custodian would not maintain potentially responsive records and, accordingly, a search was not conducted of that custodian's paper records.

*Id*. ¶ 9. Plaintiff contends that the conceded errors in the Brinkmann Declaration indicate bad faith on the part of Defendant. Pl.'s Reply In Supp. of His Cross-Mot. For Partial Summ. J., ECF No. 20 at 1-2 [hereinafter "Pl.'s Reply Memo."]. He also seeks discovery of the administrative record on that basis. *Id*.

Although the Brinkmann Declaration contained errors, those errors are not indicative of bad faith. Mistakes alone do not imply bad faith. *See Fischer v. DOJ*, 723 F. Supp. 2d 104, 109 (D.D.C. 2010) ("To be sure, defendant has not performed its duties under FOIA perfectly, but

10

error-free performance is not required."). The Supplemental Brinkmann Declaration addresses, to the court's satisfaction, the discrepancies between OIP's internal records and the initial declaration. It acknowledges the errors made, explains why the internal records provide an incomplete picture of OIP's process, and offers additional details regarding the search. "[T]he agency's cooperative behavior of notifying the court and plaintiff that it had discovered a mistake, if anything, shows good faith." *Id.* Accordingly, the court finds that the Brinkmann Declarations are entitled to a presumption of good faith. The court also denies Plaintiff's request for discovery. *See Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) ("Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed [and] submitted in good faith and [where] the court is satisfied that no factual dispute remains.").

b.     Plaintiff's Argument that the Search was Inappropriately Narrowed

Plaintiff next contends that DOJ's email search was too narrow and was not adequately crafted to capture relevant communications between DOJ staff and the "Obama administration." It argues that DOJ's decision to search for emails between DOJ and the "eop.gov" email domain used by the Executive Office of the President was too limited in scope—emails with other possible relevant executive branch agencies, such as the Department of Defense and the Central Intelligence Agency (CIA), were not reviewed. Pl.'s Reply Memo at 7. In response, DOJ contends that the phrase "member of the Obama administration" is unclear and that the "most reasonable interpretation of the phrase in context" was someone who worked at the White House, *i.e.* the Executive Office of the President. Brinkmann Decl. ¶ 4 n.1. According to DOJ, "the most logical 'member[s] of the Obama administration' to have exchanged e-mails on the topic with DOJ would have worked with the Executive Office of the President." Reply Mem. In Supp. of Def.'s Mot. For Summ. J. and Opp'n to Pl.'s Cross-Mot. For Summ. J., ECF No. 17, 18 at 7.

11

To evaluate the adequacy of a search under FOIA, a court must first examine the scope of the request itself. *See Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995). Though FOIA requires the requester to "reasonably describe[ ]" the records sought, 5 U.S.C. § 552(a)(3)(A), agencies must liberally construe FOIA requests, even where a request is poorly defined, *see LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (citations omitted) (stating that request was "not a model of clarity" but the defendant was obligated to "construe a FOIA request liberally," particularly when a "request is reasonably susceptible to the broader reading"). *See also Nation Magazine*, 71 F.3d at 890 (citations omitted) (quotation marks omitted) ("Although a requester must reasonably describe the records sought, an agency also has a duty to construe a FOIA request liberally."). If an agency has doubts about a request's interpretation, it is free to contact a FOIA requester to "clarify or narrow an overly broad request." *Jarvik v. CIA*, 741 F. Supp. 2d 106, 115 (D.D.C. 2010). *See also Kenney v. DOJ*, 603 F. Supp. 2d 184, 188 (D.D.C. 2009) (citation omitted) (internal quotation marks omitted) ("Such a request for clarification is appropriate where a request is not specific enough to allow a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.").

With these principles in mind, the court concludes that DOJ's interpretation of "Obama administration" as consisting only of members of the Executive Office of the President—at least in the context presented here—is too limited. The natural meaning of the term "administration," when referring to a U.S. President's administration, encompasses more than officials in the Executive Office of the President. At a minimum, it includes other high-level cabinet and agency officials. Indeed, the White House's own website, www.whitehouse.gov,[2] identifies a host of

---

[2] "The Administration," https://www.whitehouse.gov/ (last visited Aug. 6, 2015).

different individuals and offices that are within "The Administration," including the Vice President, the First Lady, "The Cabinet," and various "Executive Offices," in addition to the "Executive Office of the President." *Id.*[3] And, on matters of national security and the fight against terrorism, an ordinary person would likely include within the term "Obama administration" high-ranking Cabinet and agency officials, such as the Secretary of Defense and the Director of the CIA, who are involved with such issues on a day-to-day basis.

DOJ, of course, was not required to search for communications with every conceivable agency and person in the "Obama administration" in order to sufficiently respond to Plaintiff's request. It was reasonable for the agency to use email domains to narrow the number of possible recipients of relevant communications. But the narrowing of possible recipients should have taken into account the subject matter and the executive branch stakeholders who were likely involved. For instance, it is easy to imagine that DOJ might have exchanged relevant communications about drone strikes on U.S citizens in Yemen with high-level officials at the Department of Defense, the Department of State, the Department of Homeland Security, the Office of the Director of National Intelligence, the Central Intelligence Agency, or other national security agencies. A search that included such agencies might not have yielded additional responsive documents, but at least then DOJ would have fulfilled its obligation to conduct a search "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. Further, if DOJ was at all uncertain about the scope of Plaintiff's request, it could have asked him what he meant by "Obama administration," which it did not do.

---

[3] In an article that appeared in Slate.com titled "What's a Senior Administration Official?," writer Daniel Engber addressed the question of who the media refers to when using the moniker "senior administration official" to quote an anonymous source. Engber's answer was that "Senior administration officials don't have to come from the White House. Cabinet secretaries are undoubtedly senior, and some reporters extend the title to their deputies and undersecretaries." (Nov. 18, 2005, 6:07 PM), http://www.slate.com/articles/news_and_politics/explainer/2005/11/whats_a_senior_administration_official.html (last visited Aug. 6, 2015).

13

The court notes that, had DOJ confined its email search to the Executive Office of the President after exercising reasonable diligence, its conclusion might be different. The record, however, contains no evidence that DOJ limited its search based on ascertained facts about who within the Obama administration would have received relevant communications from DOJ. The Brinkmann Declaration simply states, in conclusory fashion, that DOJ equated the "Obama administration" with the Executive Office of President for purposes of conducting the search. Brinkmann Decl. ¶ 4 n.1, ¶ 14. The court thus concludes that DOJ did not, as it was required to do, construe Plaintiff's FOIA request liberally and that its email search was not reasonably calculated to uncover all relevant documents.

c. <u>Plaintiff's Argument that OIP's Search Within OLA was Inadequate</u>

Plaintiff next contends that OIP's search within OLA was inadequate. OIP identified two possible custodians within OLA. Plaintiff argues that, in addition to the two identified custodians, OIP should have searched the files of other OLA personnel whose names appear on produced documents as "either senders or recipients of emails about drones." Pl.'s Reply Memo at 4-5; *see also* Pl.'s Summ. J. Memo at 9. DOJ answers that OIP's search method was "dynamic" and "informed by the expertise of Department personnel with knowledge of the matter at hand." Brinkmann Supp. Decl. ¶¶ 5-7. More significantly, according to the Supplemental Brinkmann Declaration, OIP engaged in "numerous personal conversations" with an OLA staffer who had involvement with the subject matter before concluding that no other custodians were likely to have responsive, non-duplicative documents. *Id.* ¶ 12.

The Court of Appeals has held that an agency answering a FOIA request can conduct a standard search in response to a general request, but "it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry. Consequently,

14

the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998).

Here, DOJ did not ignore leads when identifying possible custodians within OLA. Rather, OIP "continually reassess[ed]" its searches based on input from DOJ personnel. Brinkmann Supp. Decl. ¶ 6. Although Plaintiff is correct that certain OLA staffers whose records were not searched did appear on produced emails about drones—which the Supplemental Brinkmann Declaration acknowledges, *id.* ¶ 12—those staffers were excluded as possible custodians only after extensive discussions with knowledgeable OLA personnel. Indeed, the Supplemental Brinkmann Declaration confirms that "[n]one of the other OLA staffers identified by plaintiff in his cross-motion were identified as likely to maintain original material not already captured by the searches" of the two identified custodians. *Id.* It comes as no surprise that OIP's inquiries revealed a small number of relevant OLA custodians. The distribution of pertinent records "was necessarily restricted to only those Department personnel who had direct involvement in the matter." Brinkmann Supp. Decl. ¶ 7. Thus, affording a presumption of good faith to Brinkmann's declarations, the court finds that DOJ's search of OLA was reasonably calculated to locate responsive records.

d.    Plaintiff's Argument that the Search Terms Were Inadequate

Plaintiff's final challenge to the adequacy of DOJ's search is his claim that OIP neglected to add and run additional search terms, such as "drone" and "UAV," which he asserts were implicit in his request. Pl.'s Summ. J. Memo at 13; *see also* Pl.'s Reply Memo at 9 (arguing that DOJ failed to "search for the term 'drone' in what it understood to be a FOIA request about drones," making the search "plainly inadequate").

15

An agency responding to a FOIA request "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996). Rather, the agency is "bound to read [the request] as drafted, not as either agency officials or [Plaintiff] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). *See also Hall v. CIA*, 881 F. Supp. 2d 38, 61 (D.D.C. 2012) ("[A] showing that each newly suggested search term existed in a single document is not enough to find the CIA's search inadequate without further explanation as to why these terms in particular would uncover responsive documents that the previous search did not."). Thus, the court's inquiry into the adequacy of the search turns on "the reasonableness of the effort in light of the *specific* request." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (citation omitted) (internal quotation marks omitted) (emphasis added).

Here, the court finds that DOJ search terms were adequate. An agency presented with a FOIA request which expressly prescribes a set of search terms—as Plaintiff's request did here— ordinarily is not required to conceive of additional search terms that might produce responsive documents. Indeed, when a requester communicates specific search terms, it is reasonable for the agency to presume that he or she has selected them because the requester believes that those terms are reasonably calculated to identify responsive documents.[4] That is particularly true where, as here, the requester is sophisticated as to FOIA and a frequent FOIA litigant in this court.[5] If "drone" was as obvious a search term as Leopold claims, surely he would have identified it himself.

---

[4] This is not a case, for instance, in which only the agency has knowledge of the terms that would produce responsive records, such as, for example, when agency uses a codename or other moniker to refer to an operation or project.
[5] *See, e.g.*, *Leopold v. CIA*, CV 14-48 (JEB), 2015 WL 1445106 (D.D.C. Mar. 31, 2015); *Truthout v. DOJ*, 20 F. Supp. 3d 760 (E.D. Cal. 2014), *reconsideration denied* (June 4, 2014); (pending cases) *Leopold v. Dep't of Def.*, No. 14-cv-30 (D.D.C. filed Jan. 9, 2014); *Leopold v. DOJ*, No. 14-cv-327 (D.D.C. filed Feb. 27, 2014); *Leopold v. Nat'l Sec. Agency*, No. 15-cv-999 (D.D.C. filed June 24, 2015); *Shapiro v. Dep't of J.*, Civil Action No. 13-cv-1139 (RBW).

Further, Brinkmann stated in her supplemental declaration that, "based on my conversations with knowledgeable officials within the Department, the records located as a result of these searches, utilizing the search terms provided by plaintiff, are consistent with the corpus of material which I understand to exist within the Department on this topic." Brinkmann Supp. Decl. ¶ 19. Once again presuming the good faith of the Brinkmann declaration, the court finds that Defendant's use of the search terms provided by Plaintiff, and no additional terms, was both reasonable and adequate.

## B.     Redactions to the White Paper

The court turns next to Plaintiff's challenge to DOJ's invocation of FOIA exemptions 1 and 3, which it uses to justify the redactions made to the White Paper. Brinkmann Decl., Ex. F at 19-40.[6]

Although in enacting FOIA Congress recognized the strong public interest in transparent government, it nevertheless determined that "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Congress therefore included in FOIA nine exemptions under which an agency can refuse to disclose otherwise responsive information. *See* 5 U.S.C. § 552(a)(4)(B), (b)(1)-(9). Courts must read these exemptions narrowly "as to provide the maximum access consonant with the overall purpose of the Act." *Vaughn*, 484 F.2d at 823. When an agency has withheld requested information, the agency's affidavits must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically

---

[6] DOJ redacted a portion of one document under FOIA exemption 6 as a "clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). The redaction in question was of a DOJ employee's cell phone number. Brinkmann Decl. ¶ 21. Plaintiff has not challenged that redaction and, therefore, has conceded it. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

falls within the claimed exemption, and [must not be] controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Casey*, 656 F.2d at 738.

A court must determine *de novo* whether an agency properly withheld information and may examine the contents of the agency's records *in camera* to that end. 5 U.S.C. § 552(a)(4)(B). But "the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Judicial Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (citations omitted) (internal quotation marks omitted).

This court is not the first to address the redactions to the White Paper at issue here. The document has been the subject of extensive FOIA litigation in this and other courts. In this district, Judge Collyer, faced with a FOIA request similar to Plaintiff's, initially upheld the CIA's response of neither confirming nor denying the existence of documents pertaining to the use of drones for targeted killings—known as a *Glomar* response—on the ground that "the release of any acknowledgment of responsive records could damage national security." *ACLU v. DOJ*, 808 F. Supp. 2d 280, 300 (D.D.C. 2011) (*Drones I*). That decision was overturned, however, after the Obama administration made public disclosures regarding drone strikes while the case was pending on appeal. The Court of Appeals thus rejected the agency's *Glomar* response and ordered it to evaluate the FOIA request. *See ACLU v. CIA*, 710 F.3d 422, 430 (D.C. Cir. 2013) (*Drones II*). On remand, Judge Collyer reviewed the CIA's production of records, which included the same redacted version of DOJ's White Paper that is at issue here. *ACLU v. CIA*, No. 10-cv-436 (RMC), 2015 WL 3777275 (D.D.C. June 18, 2015) (*Drones III*). She ruled that the redactions made to the

18

White Paper were appropriate under FOIA Exemption 1, though she did not review the document *in camera*. *Id.* at 9-11, 16.

Meanwhile, in parallel litigation in the Southern District of New York, the ACLU and the New York Times brought suit against DOJ and the CIA over FOIA requests seeking, as Leopold does here, legal memoranda that justified targeted killings of U.S. citizens. *N.Y. Times Co. v. DOJ*, 915 F. Supp. 2d 508, 540 (S.D.N.Y. 2013) (*Times I*). The district court granted summary judgment for the agencies, but the Second Circuit Court of Appeals reversed, holding that DOJ and the CIA had waived many of their asserted exemptions through public disclosure of the November 2011 White Paper, as well as through various statements from Obama administration officials concerning the use of drones and the strike that killed al-Aulaqi. *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 120-21 (2d Cir. 2014) (*Times II*). On remand, the district court conducted an *in camera* review of responsive documents, including the redacted White Paper. *ACLU v. DOJ*, 12-cv-794 (CM), 2015 WL 4470192, at \*17 (S.D.N.Y. July 16, 2015) (*Times III*). The court concluded that "[t]he portions of the document that have not already been produced by the Government need not be produced." *Id*.

Although two other courts have considered the very same document that is at issue here, this court has an independent obligation to conduct its own *de novo* review of the agency's decision to withhold information, taking into account Plaintiff's specific claims and the record before the court. To that end, the court ordered DOJ to produce an unredacted version of the White Paper for *in camera* review. Order, ECF No. 24. *See also Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) (citation omitted) (internal quotation marks omitted) ("[W]hen the requested documents are few in number and of short length, *in camera* review may save time and money");

*Allen v. CIA*, 636 F.2d 1287, 1298-99 (D.C. Cir. 1980) ("An examination of the document would make totally unnecessary speculation and inference as to the contents of the document[.]").

### 1. No Waiver of FOIA Exemptions

Plaintiff makes an argument similar to that which prevailed before the D.C. Circuit and the Second Circuit: namely, that the Obama administration's official acknowledgement of the CIA's role in targeting killings, including that of al-Aulaqi, constitutes a waiver of the invoked FOIA exemptions. When "information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). The D.C. Circuit applies a three part test for whether information has been "officially acknowledged": "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *ACLU v. Dep't of Def.*, 628 F.3d 612, 620-21 (D.C. Cir. 2011). "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). The plaintiff carries the burden of "pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

To support its redaction of the White Paper, DOJ submitted two declarations—one filed publicly and one filed under seal—from Martha Lutz, the Chief of the Litigation Support Unit of the CIA. In her publicly filed declaration, Lutz states that the information redacted from the White Paper "goes beyond what has been publicly disclosed." Lutz Decl. ¶ 18. She further declares, "I have considered the information released in the course of the *ACLU* and *New York Times*

litigation [as well as] other government disclosures and have confirmed that there has been no official acknowledgement of any of the information that was redacted from the DOJ Classified White Paper." *Id.* ¶¶ 18-19.

The court finds these statements—supported by the Classified Lutz Declaration and the court's *in camera* review of the White Paper, and with nothing in the record or from related cases to the contrary—to be accurate. Though the CIA's role in the targeted killing of al-Aulaqi has been made public, the redacted portions of the White Paper concern information that has not been released or otherwise publicly acknowledged. *See ACLU v. Dep't of Def.*, 628 F.3d at 620-21. Thus, the court rejects Plaintiff's claim of waiver and turns next to the validity of the exemptions.

       2.      *Exemption 1*

FOIA Exemption 1 permits an agency to withhold information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Agencies may establish the applicability of Exemption 1 by declaration. *See ACLU v. Dep't of Def.,* 628 F.3d at 619. As long as the declaration "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Id.*

The operative classification order for the purposes of Exemption 1 is Executive Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) [hereinafter "E.O. 13,526"], which sets forth substantive and procedural criteria that an agency must follow to properly invoke the exemption. E.O. 13,526 requires, in relevant part, that information should only be classified as "Top Secret"

if (i) its unauthorized disclosure could reasonably be expected to cause exceptionally grave, identifiable or describable harm to national security and (ii) the information pertains to one of eight subject-matter classification categories. E.O. 13,526 §§ 1.1(a)(4), 1.2(a)(1), 1.4. The Order also includes certain procedural requirements: (i) the information may be classified only by an individual with original or derivative classification authority, *see id*. §§ 1.1(a)(1), 2.1, and (ii) the classified information must be marked with the identity of the classifier, a concise reason for classification that cites one of the subject matter categories, and the date and duration of classification, *id.* § 1.6(a). But an agency may exclude some of this data if it would reveal additional classified information. *Id*. § 1.6(b).

As noted, the court has reviewed both the public and the non-public Lutz Declarations and conducted an *in camera* review of the White Paper. As to the procedural requirements of E.O. 13,526, the court is satisfied with Lutz's assertion that "the documents are properly marked in accordance with section 1.6 of the Executive Order." Lutz Decl. ¶ 12. Additionally, because Lutz holds original classification authority, *id.* ¶ 2, and has determined that the document in question is currently and properly classified, *id.* ¶ 7, the derivative classification requirements of E.O. 13,526 § 2.1 are irrelevant to this case. *See Judicial Watch*, 715 F.3d at 944 (internal quotation omitted) ("[B]ecause the [agency] declaration removes any doubt that a person with original classification authority has approved the classification decision, any failure relating to application of the [derivative] classification guide would not reflect adversely on the agency's overall classification decision.").

As to the substantive elements of E.O. 13,526, the court concludes that most, but not all, of the redactions are proper. Most of the redacted text pertains to another classified record that generally concerns CIA activities. Other redacted portions pertain either to specific CIA activities,

foreign relations, or foreign activities of the United States.  Further, affording the proper deference to the classifying agency on issues of national security, the court agrees with Lutz that disclosure of most of the redacted text "could reasonably be expected to result in exceptionally grave damage to [the] national security" of the United States.  Lutz Decl. ¶¶ 10, 13; *see* E.O. 13,526 §§ 1.4(c)-(d).

But the court does not agree that the White Paper is properly redacted in every respect. Several redacted passages contain nothing more than legal analysis that does not in any way reference or pertain to any classified information.  *See, e.g.*, Brinkmann Decl., Ex. F at 20-21, first two full paragraphs following section heading "B."  *See Drones III*, 2015 WL 3777275, at *10 (emphasis in original) ("[A] legal analysis need not constitute an intelligence activity, source, or method by itself to warrant protection so long as it *pertains to* an intelligence activity, source, or method.").  Other parts of the White Paper containing similar legal analysis were disclosed to Plaintiff.  *See Times II*, 756 F.3d at 120 ("With the redactions and public disclosures discussed above, it is no longer either 'logical' or 'plausible' to maintain that disclosure of the legal analysis in the OLC–DOD Memorandum risks disclosing any aspect of 'military plans, intelligence activities, sources and methods, and foreign relations.'").  Thus, the court finds that certain portions of the White Paper consisting of legal analysis that does not reference or pertain to classified material should be disclosed.

Additionally, one redacted sentence simply contains facts that already have been publicly acknowledged and disclosed to Plaintiff.  *See, e.g.*, Brinkmann Decl., Ex. F at 19, first sentence under section heading "A."  Because the same information is unredacted in other parts of the White Paper, that additional sentence shall be disclosed as well.

23

The court has set forth in the attached Appendix the redacted portions of the White Paper that do not fall within Exemption 1 (or Exemption 3[7]) and thus must be disclosed to Plaintiff.

### 3. Exemption 3

FOIA Exemption 3 authorizes agencies to withhold information that is specifically exempted from disclosure by statute, as long as the statute in question "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Defendant relies upon two statutes to justify Exemption 3 in this case: Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (formerly 50 U.S.C. § 403-1(i)(1)), which provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1); and Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (formerly 50 U.S.C. § 403g), which protects from disclosure information that would reveal the "organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]." Both statutes have long qualified as proper justification for invoking Exemption 3. *See Fitzgibbon*, 911 F.2d at 761; *Weissman v. CIA*, 565 F.2d 692, 694 (D.C. Cir. 1977) (holding that the predecessors of the two statutes are "precisely the type of statutes comprehended by exemption (b)(3).").

Page 11 of the White Paper contains a single redaction premised solely on Exemption 3. (DOJ invoked both Exemptions 1 and 3 for all other redactions.[8]) The court has reviewed that redaction and, affording the proper deference to the agency, finds that the Central Intelligence

---

[7] For the same reasons that the court concludes that these sections do not fall within Exemption 1, they do not fall within Exemption 3.

[8] It is unclear to the court why the Page 11 redaction invokes only Exemption 3, when the same or similar information found elsewhere in the White Paper invoked both exemptions.

24

Agency Act warrants its nondisclosure. The redacted text, if produced, would reveal information about the function of the CIA relating to drone operations, which has not otherwise been publicly disclosed or acknowledged. Furthermore, the redaction, if disclosed, would reveal a detail of an "intelligence method," if that term is broadly construed, used by the CIA. The court thus concurs with DOJ's invocation of Exemption 3 on page 11 of the White Paper.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment is therefore granted in part and denied in part, and Plaintiff's Cross-Motion for Partial Summary Judgment is granted in part and denied in part. DOJ must conduct a new search for responsive email communications between the DOJ and members of the "Obama administration." It also must produce a revised redacted White Paper to Plaintiff that complies with the Appendix attached to this opinion.

The parties shall file a joint status report within 30 days describing the steps DOJ has taken to comply with the court's Order.

Dated:  August 12, 2015

Amit P. Mehta
United States District Judge

## APPENDIX

The following passages shall be disclosed to Plaintiff in unredacted form:

1. Page 2, first sentence under the section heading "A."  The remainder of that paragraph is properly subject to redaction.

2. Pages 2-3, first two full paragraphs following section heading "B."

3. Page 5, full paragraph immediately above section heading "II."

4. Page 16, redacted sentence between the sentence ending with " . . . the armed forces" and the sentence starting with "Thus, just as Congress . . . ."

5. Page 16, redacted portion of the sentence starting after the words "in accord with" up to the end of the sentence.